The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. The Industrial Commission has jurisdiction over the parties and the subject matter.
3. The employer-employee relationship as defined by N.C. Gen. Stat.97-2(2) existed between the parties on or about May 31, 1997.
4. Defendant is self-insured with Key Benefits Services as the third party administrator.
5. The issues may be bifurcated such that the only issue before the Commission at this time is whether the settlement agreement previously approved by the Commission should be set aside.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
 FINDINGS OF FACT
1. Plaintiff was 41 years of age on the date of the hearing before Deputy Commissioner Cramer. She completed the ninth grade and later got her G.E.D. Plaintiff began working for Mega Force in March 1997. In May 1997, she was assigned to work at Cutler-Hammer.
2. Plaintiff alleges that she injured her back on or about June 5, 1997, while working at Cutler-Hammer. She testified that she was helping two other employees move a steel belt, and that one of them dropped her load, shifting extra weight to plaintiff and that she felt pain in her lower back, legs and arms. The two other workers she says were involved were "Robert and "Carrie neither of whom testified at the hearing.
3. There were no other witnesses to plaintiffs alleged accident. The employers Witness/Accident Investigation Report was signed by Clarence Kelly. However, there was no evidence that Mr. Kelly was there at the time of the alleged incident, or had any first-hand knowledge of it. Mr. Kelly did not testify at the hearing. He has a personal relationship with plaintiff and has lived with her from time to time.
4. On June 19, 1997, plaintiff gave a recorded statement to Tammy Childress with Key Benefits Services. Clarence Kelly was with plaintiff at the time she gave this telephone interview. It is apparent that during the interview, plaintiff was being coached by Kelly on what she should say.
5. Plaintiffs credibility was a major consideration in the denial of this case, and is an important consideration in evidence regarding whether the clincher agreement should be set aside. Although the issue of whether plaintiff sustained a compensable injury by accident is not squarely before the Commission at this time, plaintiffs testimony about the alleged accident is not credible.
6. Plaintiffs demeanor and her presentation of testimony at the hearing before the Deputy Commissioner were not credible. In particular, when questioned by her own attorney, plaintiff was much more direct and sure of her answers than when she was questioned by defense counsel. She displayed a much better memory for details on direct than on cross-examination. Plaintiff often became vague in her responses on cross-examination.
7. When plaintiffs claim was reported to the servicing agent, Key Benefits Services, it was initially handled by Tammy Childress, who took plaintiffs recorded statement. After taking this statement, Ms. Childress denied the claim, based upon plaintiffs lack of credibility. She completed a Form 61 denial and sent a copy to plaintiff. Ms. Childress went out on maternity leave, and Jeffrey Millett took over the handling of plaintiffs claim.
8. Plaintiff and Jeffrey Millett had discussions regarding her claim. During such discussions, Mr. Millett never told plaintiff that the Commission had denied her claim. He did not otherwise make any misrepresentations to plaintiff about her claim.
9. Eventually, Mr. Millett and plaintiff entered into negotiations to settle her claim. Mr. Millett did not pressure her to settle her claim. He made an initial offer around $1,000 and plaintiff countered with a demand for $1,500 or $2,000. They reached agreement to settle the claim through a final compromise settlement agreement, referred to as a clincher, for $1,250. The employer and administrator did not undertake to pay any outstanding medical bills.
10. The final agreement was prepared by Barbara Ruarks law firm and submitted to plaintiff in August, 1997. Before signing the agreement, plaintiff consulted several lawyers, at least one of whom reviewed the agreement, but said he did not want to get involved. The agreement was signed by plaintiff in front of a notary on August 18, 1997.
11. The agreement was forwarded to the Commission and received by the Executive Secretarys office on October 1, 1997. It was directed to the attention of Special Deputy Commissioner Ronnie Rowell for review.
12. At the time the agreement was entered and forwarded to the Commission, plaintiff had seen a neurosurgeon, whose records had not been included in the package of medical records. At the hearing before Deputy Commissioner Cramer, plaintiff referred to this doctor as a chiropractor. Mr. Millett was not aware that plaintiff had seen this particular doctor. Plaintiff had not advised him or anyone else at Key Benefits that she had seen this doctor and had not furnished them the doctors records. If Mr. Millet had been aware of treatment by this doctor, he would have requested copies of the records. The fact that medical records were missing from the final settlement package is not a mutual mistake, but a unilateral failure to disclose by plaintiff.
13. Ronnie Rowell followed his usual procedure in reviewing the agreement for approval. He read the agreement and reviewed the accompanying medical records. He checked the agreement for compliance with Rule 502.
14. Following his review, Special Deputy Commissioner Rowell approved the agreement on October 13, 1997. Although he was not aware of the neurosurgeons records at that time, these records would not necessarily have prevented him from approving the agreement. Since this was a denied claim, plaintiff could eventually receive no benefits, should the matter go to a hearing and be denied by decision of a Deputy Commissioner.
15. The same day that Ronnie Rowell approved the agreement, plaintiff faxed a letter to the Industrial Commission to the attention of Tracey Weaver. In this letter, plaintiff indicated that she did not want the agreement approved, stating "Please stop the agreement. However, Ronnie Rowell did not see this letter prior to approving the agreement.
16. Although Ronnie Rowell may not have approved the agreement, had he seen plaintiffs letter, this by itself does not constitute a mutual mistake. Plaintiffs changing her mind is not a mutual mistake.
17. There is no evidence that the final settlement agreement in this case was procured through fraud, misrepresentation, undue influence or mutual mistake.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order to set aside the compromise settlement agreement, plaintiff must show that there has been an error due to fraud, misrepresentation, undue influence or mutual mistake. Plaintiff has not met this criteria. N.C. Gen. Stat. 97-17.
2. The fact that plaintiff attempted to revoke her consent to the agreement on the day it was approved by the Commission is not determinative. There is no basis to set aside the agreement under N.C. Gen. Stat. 97-17. Glenn v. McDonalds, 109 N.C. App. 45
(1993).
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Under the law, plaintiffs request to set aside the compromise settlement agreement is DENIED.
2. Defendant shall pay the costs.
This the ___ day of May 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/bjp/nwg